**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00103-WJM-NYW

JOSHUA D. SWAN,

    Plaintiff,

v.

DR. MAURICE FAUVEL, D.O., Individually and his Official Capacity as Physician for Sterling
    Correctional Facility,
JAMIE SOUCIE, Individually and in her Official Capacity as Health Service Administrator for
    Sterling Correctional Facility,
PHYSICIAN HEALTH PARTNERS, INC., d.b.a. CORRECTIONAL HEALTH PARTNERS, a
    Colorado Corporation,
DR. STEPHEN KREBS, M.D., CEO and President of Correctional Health Partners and
    Chairman of Physician Health Partners,
JULIE DURSEY, Regional Manager of Physician Health Partners,
JOHN AND JANE DOES, 1 to 20, Individually and in their Official Capacities as Agents of the
    Colorado Department of Corrections, and
JOHN AND JANE DOES, Numbers 1 to 20, As Unidentified Employees Working for Physician
    Health Partners,

    Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Nina Y. Wang

    This action comes before the court on Defendants Physician Health Partners d/b/a Correctional Health Partners ("CHP") and Dr. Stephen Krebs ("Dr. Krebs" or "Defendant Krebs") (collectively, "CHP Defendants") Motion to Dismiss, filed on March 20, 2015 [#20] ("CHP Defendants' Motion to Dismiss"), and on Defendants Dr. Fauvel ("Dr. Fauvel" or "Defendant Fauvel") and Jamie Soucie's ("Ms. Soucie" or "Defendant Soucie") (collectively, "CDOC Defendants") Motion to Dismiss Plaintiff's Complaint (Doc. 1), filed on March 23, 2015

[#22] (the "CDOC Defendants' Motion to Dismiss") (collectively, the "Motions to Dismiss").[1] Pursuant to the January 20, 2015 Order Referring Case [#7], the February 10, 2015 Reassignment [#12], and the Memoranda dated March 20, 2015 [#21] and March 23, 2015 [#23], the Motions to Dismiss are before this Magistrate Judge. The court has reviewed the operative Complaint [#1], the Motions to Dismiss, Plaintiff Joshua D. Swan's ("Plaintiff" or "Mr. Swan") Responses [#34, #35], the CHP Defendants' Reply [#36], the CDOC Defendants' Reply [#38], the associated exhibits, the case file in the instant action, and the applicable case law. Finding that oral argument would not materially assist in the court's disposition, for the reasons set forth below, the court hereby respectfully RECOMMENDS that the Motions to Dismiss be GRANTED.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Mr. Swan filed his original and operative Prisoner Complaint on January 15, 2015. [#1]. The following is a recitation of allegations from the Complaint relevant to the disposition of the instant Motions to Dismiss that, where well-pled, the court takes as true in determining whether Plaintiff has stated any viable claim.

On February 2, 2013, Mr. Swan, who at all times relevant to his Complaint was incarcerated at the Sterling Correctional Facility ("SCF"), suffered an injury to his left knee as he attempted to pick up a basketball in a SCF gymnasium. [#1 at 5, ¶¶ 1-4]. That evening, Mr. Swan submitted a "medical kite" (*i.e.*, a written request) for treatment of his swollen knee. [*Id.* at ¶ 7]. On February 5, 2015, SCF medical staff summoned Mr. Swan and provided him with an aluminum adjustable cane. [*Id.* at ¶ 8]. On February 8, 2015, Defendant Fauvel examined Mr. Swan and suggested that the MCL in Mr. Swan's left knee may have been torn. [*Id.* at ¶ 9].

---

[1] This Order refers to the ECF docket number for documents, and the page number as assigned by the court's ECF system for consistency and ease of reference.

SCF medical staff provided Mr. Swan with a pair of aluminum crutches. [*Id.*]. On February 22, 2013, Mr. Swan's left knee was x-rayed. [*Id.* at ¶ 10]. Mr. Swan was scheduled to be examined again on March 25, 2013, but, due to the untimely death of Colorado Department of Corrections Executive Director Tom Clements, this appointment was cancelled. [*Id.* at 5-6, ¶ 11]. On April 17, 2013, Mr. Swan was again seen by Dr. Fauvel. [*Id.* at 6, ¶ 12]. Mr. Swan's knee remained swollen and continued to cause him pain. [*Id.*]. On May 2, 2013, Dr. Fauvel examined Mr. Swan's knee and requested a diagnostic MRI. [*Id.* at ¶ 13]. At that time, Mr. Swan was instructed to make follow-up inquiry as to whether the MRI request had been approved by CHP.[2] [*Id.*]. According to the Complaint, CHP "was responsible for pre-authorization of medical procedures recommended by outside specialists. " [*Id.* at 2].

On May 24, 2013, Plaintiff submitted a "yellow kite" form inquiry directed to Dr. Fauvel asking whether Dr. Fauvel's May 2, 2013 MRI request had been approved. [*Id.* at 6, ¶ 14]. On May 31, 2013, Mr. Swan received a response from Physician Assistant Keri McKay indicating that no decision had yet been made as to whether the MRI request would be approved. [*Id.* at ¶ 15]. On June 13, 2013, Mr. Swan again made inquiry as to whether the MRI request had been approved. [*Id.* at ¶ 16]. Mr. Swan was informed in writing by Dr. Fauvel that the request had not yet been approved, and that further testing of other sorts might be necessary prior to approval. [*Id.*].

On August 7, 2013, Mr. Swan complained in another yellow kite form inquiry of continued pain related to his injured knee, and asked again whether the MRI had been approved. [*Id.* at ¶ 17]. On August 22, 2013, Mr. Swan received a written response from Dr. Fauvel indicating that the request had been considered and denied, and that conservative therapy would

---

[2] Plaintiff also uses "Physician Health Partners" to refer to CHP in his Complaint, *see e.g.*, [#1 at 2], but in this Recommendation, the court refers to the entity as CHP.

need to pursued in the first instance. [*Id.*]. The response indicated that a physical therapy consultation would be provided. [*Id.*]. On August 28, 2013, Mr. Swan filed an informal grievance complaining that the MRI request had not been approved. [*Id.* at ¶ 18]. On September 10, 2013, Mr. Swan received a response from Dr. Fauvel indicating that Dr. Fauvel would arrange an appointment for re-evaluation. [*Id.* at ¶ 19].

On October 9, 2013, Mr. Swan submitted a yellow kite inquiry asking about the "status" of receiving a MRI and/or other treatment. [*Id.* at ¶ 20]. A SCF nurse responded in writing that a scheduled appointment was upcoming. [*Id.*]. On November 6, 2013, Mr. Swan filed a "step one" grievance complaining that he had not yet received an MRI and/or other treatment and diagnostic options perceived to be adequate by Mr. Swan. [*Id.* at ¶ 21]. On November 15, 2013, Mr. Swan was summoned to visit Dr. Fauvel. [*Id.* at ¶ 22]. Mr. Swan again complained of continued pain. [*Id.*]. Dr. Fauvel informed Mr. Swan that Mr. Swan would need to see a physical therapist before submitting an additional request for an MRI. [*Id.*].

On November 25, 2013, Mr. Swan received a response to his November 6, 2013 step one grievance from Dr. Fauvel. [*Id.* at 7, ¶ 23]. The response indicated that Dr. Fauvel had seen Mr. Swan on November 15, 2013, and that an additional appointment would be scheduled within several weeks. [*Id.*]. After receiving this response on November 25, 2013, Mr. Swan filed a "step two" grievance complaining of increased pain, and also again complaining that his recommended course of therapy did not yet provide for an MRI. [*Id.* at ¶ 24].

On December 11, 2013, Mr. Swan saw a physical therapist named Dr. Cassey. [*Id.* at ¶ 25]. Dr. Cassey provided Mr. Swan with a list of therapeutic exercises. [*Id.*]. Mr. Swan noted his perceived need for an MRI. [*Id.*]. Dr. Cassey told Mr. Swan that that decision was not Dr. Cassey's to make. [*Id.*].

On December 17, 2013, Mr. Swan received a knee brace made out of metal strips and Velcro. [*Id.* at ¶ 26]. On December 23, 2013, Mr. Swan was seen at an appointment with a physician assistant named Gatbel Chamjock. [*Id.* at ¶ 27]. Mr. Chamjock told Mr. Swan that he would be referred to an orthopedic surgeon for further evaluation of Mr. Swan's continued knee pain and loss of mobility. [*Id.*].

On December 26, 2013, Mr. Swan received a response to his step two grievance from SCF Health Services Administrator Jamie Soucie, indicating her belief that Mr. Swan had received adequate care including physical therapy instructions. [*Id.* at ¶ 28]. That same day, Mr. Swan filed a "step 3" grievance, again complaining of continued pain and the lack of an MRI to evaluate the condition of Mr. Swan's left knee. [*Id.* at ¶ 29].

In March of 2014, Mr. Swan was transported to the Sterling Regional Medical Center, where it was determined that an MRI was warranted. [*Id.*]. An MRI was later taken. [*Id.*]. On April 22, 2014, Mr. Swan was again taken to the Sterling Regional Medical Center, where a physician named Dr. Darrel Fenton recommended ACL reconstruction surgery. [*Id.* at ¶ 31]. On June 3, 2014, Mr. Swan underwent knee surgery at the Sterling Regional Medical Center performed by Dr. Fenton. [*Id.* at ¶ 32].

Based on this conduct, Mr. Swan asserts a 42 U.S.C. § 1983 claim arising under the Eighth Amendment for cruel and unusual punishment against Dr. Fauvel. [*Id.* at 8-9, ¶¶ 33-39]. Mr. Swan alleges that Dr. Fauvel's decision to recommend a conservative course of treatment after Dr. Fauvel's initial request for an MRI had been denied constituted deliberate indifference to Mr. Swan's serious problems with mobility and pain arising from his knee injury. [*Id.*]. Mr. Swan also alleges that Dr. Fauvel violated Mr. Swan's Eighth Amendment rights by failing to

submit a clerically compliant request for an MRI in the first instance, and by declining to pursue follow-up requests to CHP. [*Id.*].

Mr. Swan alleges that Ms. Souice violated his Eighth Amendment rights by declining to "order" Dr. Fauvel to re-apply for an MRI on Mr. Swan's behalf in response to Plaintiff's grievances. [*Id.* at 9, ¶ 41]. Mr. Swan alleges that Ms. Soucie exhibited deliberate indifference by "rubber stamping" the medical decisions of Dr. Fauvel and others endorsing an initially conservative course of treatment. [*Id.* at ¶¶ 42-44].

Plaintiff further alleges that Dr. Krebs, the President, CEO, and Chief Medical Officer of CHP, was personally responsible for denying approval of an MRI of Mr. Swan's left knee despite Mr. Fauvel's recommendations that such treatment was medically advisable, and thereby acted with deliberate indifference to a substantial risk of serious harm. [*Id.* at 10-11, ¶¶ 51-52]. The denial of such approval was allegedly based on cost considerations. [*Id.* at 10, ¶ 49]. Mr. Swan's claims against Mr. Krebs and CHP are premised on this purported misconduct. [*Id.* at 10-11].

The CHP Defendants, in their Motion to Dismiss, argue that Plaintiff's claims as to Dr. Krebs and CHP fail because there is no non-conclusory allegation that Dr. Krebs personally participated in any decision to deny Mr. Swan an MRI, and because Mr. Swan's preference for an MRI rather than the conservative treatment options initially recommended and provided amounts not to deliberate indifference but at most to a non-actionable difference of opinion. [#20 at 6-10]. The CHP Defendants also contend that any municipal liability claim against CHP fails because Mr. Swan's Complaint fails to identify any custom or policy of CHP that was a moving force behind the alleged undue delay in provision of an MRI to Mr. Swan. [*Id.* at 10-11].

6

The CDOC Defendants argue that they are immune in their official capacities as to any claim for damages. [#22 at 5-6]. The CDOC Defendants also argue that Plaintiff's Complaint fails to adequately allege personal participation by Ms. Soucie in any constitutional violation, that Mr. Swan's allegations as to his course of care fail to state a viable deliberate indifference claim, and that the CDOC Defendants are entitled to qualified immunity in their personal capacities. [#22 at 8-13]. In addition, the CDOC Defendants contend that 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act (PLRA), which provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," bars Plaintiff's compensatory damages claims. 42 U.S.C. § 1997e(e) [#22 at 13-14]. Finally, the CDOC Defendants also argue that Plaintiff's Complaint fails to state a punitive damages claim, and that any claim for injunctive relief has been mooted by the MRI and subsequent surgical reconstruction Mr. Swan received in the spring of 2014. [*Id.* at 14-16].

**ANALYSIS**

**I.  Standard of Review**

Both the CHP and CDOC Defendants move to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a cognizable claim for a violation of Plaintiff's rights under the Eighth Amendment. [#20, #22]. In addition, the CDOC Defendants argue that this court lacks subject matter jurisdiction over certain claims for relief, and accordingly, those claims for relief should be dismissed pursuant to Rule 12(b)(1). [#22].

**A.  Failure to State a Cognizable Claim**

The standard for analyzing whether a complaint states a cognizable claim under Fed. Rule Civ. P. 12(b)(6) is well-known. The court must not only accept as true all well-pleaded

facts, but also must also all reasonable inferences in favor of plaintiff to decide whether they plausibly entitle plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009); *accord*. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (recognizing that a plaintiff must frame a complaint with enough factual matter, when taken as true, to plausibly suggest that he or she is entitled to relief) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007)). A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A claim may be dismissed because it asserts a legal theory that is not cognizable as a matter of law, or because it fails to state sufficient facts to establish a legally recognized claim. *Golan v. Ashcroft*, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### B. Subject Matter Jurisdiction

The CDOC Defendants also forward a facial, jurisdictional attack against any claim for monetary damages against them in their official capacities. [#22 at 5-6]. A facial attack on subject matter jurisdiction questions the sufficiency of a complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing such a motion, the court accepts the allegations of the complaint as true, and reviews their sufficiency pursuant to Fed. Rule Civ. P. 12(b)(6). *Id.*

## II. Application

The court first addresses the most significant argument, *i.e.*, whether Plaintiff has stated a cognizable constitutional violation, which is common to both the CHP and CDOC Defendants' respective Motions to Dismiss. The court then, for the sake of completeness, considers the CHP and CDOC Defendants' other arguments, turning next to claims brought against the Defendants

in their individual capacities and then considering the claims against the CDOC Defendants in their official capacities and CHP as an entity. Finally, the court briefly considers Plaintiff's damages demands.

### A.      Plaintiff's Cruel and Unusual Punishment Claims

Mr. Swan's Complaint alleges several acts by CHP and CDOC Defendants individually amount to cruel and unusual punishment in the form of deliberate indifference to a substantial risk of serious harm:

(1)     Dr. Fauvel's decision to initially pursue a conservative course of treatment as to Mr. Swan's knee injury after CHP declined to approve an MRI [#1 at 8-9, ¶¶ 33-39];

(2)     Dr. Fauvel's purported clerical errors in submitting an MRI approval request to CHP, and Dr. Fauvel's alleged failure to follow up appropriately by submitting additional requests, also constituted deliberate indifference [*id.*];

(3)     Dr. Krebs' and CHP's declining to approve Dr. Fauvel's MRI recommendations based on cost considerations  [*id.* at 10-11, ¶¶ 49, 51-52]; and

(4)     Ms. Souice's failure to take action in response to Plaintiff's grievances, and "rubber stamp[ing]" the medical decisions of Dr. Fauvel and others endorsing an initially conservative course of treatment. [*Id.* at 9, ¶¶ 41-44].

The CHP and CDOC Defendants argue that such allegations at most show negligence and/or disagreement as to the appropriate course of treatment, and as a result fail to state a claim for deliberate indifference even if the objective seriousness of the risk of harm posed by Mr. Swan's knee injury is assumed. [#20 at 6-10, #22 at 8-13].  This court agrees.

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act deliberately and indifferently to serious medical needs of prisoners in

9

their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).  A medical need is considered sufficiently serious to require attention only "if the condition has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citation and quotation omitted).  Under the law of the Tenth Circuit, "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citation omitted).  A mere difference of opinion as to the proper course of treatment warranted for an inmate does not standing alone support a claim for cruel and unusual punishment.  *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

As noted by the CDOC Defendants, the allegations of Plaintiff's own Complaint demonstrate that Mr. Swan consistently received diagnostic and therapeutic treatments for his knee injury between the time of injury to the time of eventual surgical repair.  [#22 at 9].  The core of Plaintiff's Complaint as to all Defendants is that Plaintiff initially received conservative treatment in lieu of an MRI, based in part on CHP's cost considerations.  [*Id.* at 10, ¶ 49].  Even if CHP's refusal to approve an MRI were driven in part by cost, such allegations "fail[] to assert sufficient facts to suggest that [Plaintiff's] concerns are more than a mere disagreement over [Plaintiff's] choice of treatment or, at most, allegations of negligence or medical malpractice, which cannot constitute deliberate indifference."  *Gould v. Wetzel*, 547 Fed. App'x. 129, 132 (3d Cir. 2013) (holding that allegations as to consideration of cost in treatment decisions "do[] not suffice to state a claim, as prisoners do not have a constitutional right to limitless medical care")

10

(citation omitted). Plaintiff's allegations that he continually requested an MRI, and that certain medical professionals agreed that such an evaluation would be clinically appropriate, do not amount to a cognizable claim that the care actually prescribed and received constitutes deliberate indifference. *See, e.g.*, *Ramos v. Lamm*, 639 F. 2d 559, 575 (10th Cir. 1980) ("a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment") (citation omitted); *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (difference of opinion between medical professionals does not constitute deliberate indifference).

Because this court finds that Plaintiff fails to state a cognizable constitutional claim under the Eighth Amendment, it respectfully RECOMMENDS that both the CHP Defendants' and the CDOC Defendants' Motions to Dismiss be GRANTED on this basis alone.

> B.  **Personal Involvement of Dr. Krebs and Ms. Soucie**

The CHP and CDOC Defendants also argue that neither Dr. Krebs of CHP not Ms. Soucie of CDOC can be liable as individuals under 42 U.S.C. § 1983. Generally, to hold a government official individually liable under § 1983, the plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation.[3] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisory status alone does not create liability; rather, there must be an affirmative link between the constitutional deprivation and the defendant's

---

[3] Some panels of the Tenth Circuit have observed in cases involving challenges to conditions of confinement, the consideration of "personal participation" is supplanted by the deliberate indifference standard from *Farmer v. Brennan*, 511 U.S. 825 (1994). *Smith v. Romer*, 107 F.3d 21, *3 n.4 (Table) (1997) (unpublished disposition). Other panels have continued to analyze personal participation in addition to considering deliberate indifference. *See Martinez v. Beggs*, 563 F.3d 1082, 1092 (10th Cir. 2009); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *McDaniels v. McKinna*, 96 Fed. App'x. 757, 759 (10th Cir. 2004). This court considers personal participation separately from the subjective prong of the deliberate indifference analysis, as a distinct ground for dismissal.

personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (*citing Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)). The CHP Defendants argue that Plaintiff fails to adequately plead personal participation by Dr. Krebs in the conduct put at issue by the Complaint. [#20 at 6-7]. The CDOC Defendants argue that Plaintiff's Complaint fails to adequately plead personal participation by Ms. Soucie. [#22 at 8-9]. The court considers these arguments in turn below.

### 1. Personal Involvement of Dr. Krebs

The CHP Defendants argue that to the extent Plaintiff seeks to hold Dr. Krebs liable based on bare allegations that Mr. Krebs "supervised" CHP personnel and "was responsible" for unidentified company policies, such allegations fail to state a viable § 1983 claim as to Dr. Krebs. [#20 at 5-6]. The court agrees. However, as the CHP Defendants note [*id.*], Plaintiff's Complaint also alleges that Dr. Krebs "personally denied the Plaintiff approval for an MRI." [#1 at 10-11, ¶ 52]. In determining whether a plaintiff has stated a viable claim for relief on the pleadings, the court is required to accept such factual allegations as true. *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). Because the alleged delay in provision of an MRI is at the core of Plaintiff's Complaint, I decline to find that the lack of personal participation by Dr. Krebs provides an alternative basis for dismissal.

### 2. Personal Involvement of Ms. Soucie

Mr. Swan alleges that Ms. Souice exhibited deliberate indifference by "rubber stamping" Dr. Fauvel's prescribed course of treatment notwithstanding Plaintiff's repeated grievances. [#1 at 9, ¶¶ 41-44]. But as the CHP Defendants argue [#22 at 7], the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th

Cir. 2009). Moreover, to the extent Plaintiff seeks to complain that Ms. Soucie approved of Dr. Fauvel's treatment recommendations, prison officials are generally "entitled to rely on the diagnosis they received from the state medical authorities who examined plaintiff." *McCracken v. Jones*, 562 F. 2d 22, 24 (10th Cir. 1977). Accordingly, I find that the Complaint fails to adequately plead Ms. Soucie's personal participation in any alleged constitutional deprivation, which amounts to an alternative ground for dismissal of Ms. Soucie.

### C. Qualified Immunity: Individual Capacity Claims Against CDOC Defendants

To overcome the CDOC Defendants' qualified immunity defense as to Plaintiff's individual capacity claims, Plaintiff must adequately plead both an underlying violation of some constitutional right, and that the constitutional right at issue was clearly established at the time of the violation. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). Because I find that Plaintiff's Complaint fails to state a cognizable deliberate indifference claim as to any Defendant, I also find that the CDOC Defendants are entitled to qualified immunity as to Plaintiff's individual capacity claims, and respectfully RECOMMEND that Plaintiff's individual capacity claims be dismissed on qualified immunity grounds as well.

### D. Municipal Liability Claim as to CHP

In *Monell v. New York City Dep't of Social Services*, the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 based on the unauthorized acts of its agents. 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, to prevail on a municipal liability claim, Plaintiff must establish (1) that a municipal employee committed a constitutional violation complained of, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). Such a municipal "policy or custom" could include (1) an officially promulgated policy; (2) a custom or persistent practice; (3) deliberately indifferent

training that results in the violation of a plaintiff's federal protected rights; (4) a single decision by an official with final decision-making authority; or (5) ratification by an official with final decision-making authority of subordinates' decisions. *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). The Tenth Circuit has recognized that these principles of municipal liability extend to private entities acting under color of state law. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216-17 (10th Cir. 2003).

As to CHP, Plaintiff's Complaint alleges that it "chose to deny Plaintiff's request for a[n] MRI because it was more costly than 'conservative therapy.'" [#1 at 10, ¶ 49]. But there are no additional allegations linking this approval decision to some more general policy or custom, to deliberately indifferent training, or to a decision or ratification by an official vested with final decision-making authority by a state or municipal body. As a result, the court finds that Plaintiff's Complaint—which at most pleads conduct particular to the Plaintiff, and could be construed to seek an inference that such conduct must be consistent with some more general policy—fails to state a viable claim as to CHP. *See Salazar v. Castillo*, No. 12–cv–01481–JLK, 2013 WL 69154 at *6 (D. Colo. Jan. 7, 2013) ("Plaintiff cannot state a plausible claim of municipal liability by identifying a single incident of alleged violations and then, without any further factual substantiation, contending that such actions were consistent with and caused by a municipal policy, procedure, or failure to train."). I accordingly RECOMMEND that Plaintiff's claims as to CHP be DISMISSED WITHOUT PREJUDICE.

### G. Damages and Injunctive Relief

As discussed above, this court RECOMMENDS dismissal of Plaintiff's Complaint in its entirety for failure to state a cognizable claim for a violation of the Eighth Amendment, and therefore, any demands for damages or injunctive relief associated with Plaintiff's Complaint are

no longer viable. However, the court now considers what damages and relief Plaintiff may pursue, should any claims survive.

### 1. Official Capacity Monetary Damages

The CDOC Defendants contend that to "extent [Mr.] Swan sues CDOC Defendants for damages in their official capacity under 42 U.S.C. § 1983," any such claims for damages would be barred by the Eleventh Amendment. [#22 at 5-6]. Mr. Swan's Complaint states that "All Defendants are sued in their Individual and Official Capacities," but appears to seek economic and compensatory damages from Defendants only in their individual capacities. [#1 at 4, 13]. Mr. Swan's Responses do not address whether he seeks monetary damages against the CDOC Defendants. [#34, #35].

Under the Eleventh Amendment, an "unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Walker v. Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (ctation and quotation omitted). This immunity "constitutes a bar to the exercise of federal subject matter jurisdiction," *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted), and applies to suits arising under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). An exception to this jurisdictional bar is that plaintiffs may seek prospective injunctive relief, despite the fact that retroactive monetary relief is barred. *Walker*, 2014 WL 5072916 at *5 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900 (1984)). Accordingly, "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011).

To the extent Mr. Swan's Complaint can be read to demand monetary damages from Defendants in their official capacity, I respectfully RECOMMEND that the court find that such demand also be DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

### 2. Compensatory Damages

The CDOC Defendants also argue that the PLRA, which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of a physical injury," 42 U.S.C. §1997e(e), bars Plaintiff from seeking compensatory damages in this action. [#22 at 13-14]. In support of this argument, the CDOC Defendants contend that the only "physical injury" alleged in Plaintiff's Complaint is the knee injury Mr. Swan suffered while playing basketball in February of 2012. [*Id.*].

The court respectfully disagrees. The CDOC Defendants implicitly concede that Plaintiff's knee injury was sufficiently serious to constitute a "physical injury" as contemplated by the PLRA. Taking Plaintiff's allegations as true and drawing reasonable inferences in Plaintiff's favor, Plaintiff's Complaint pleads that the delay in provision of an MRI and surgical reconstruction of Plaintiff's knee prolonged the duration of Plaintiff's pain and loss of mobility. [#1 at 7, ¶¶ 23-25]. Courts in this District have previously recognized that "physical pain accompanied by physical effects necessitating medical treatment" collectively suffice to satisfy the PLRA's "physical injury requirement." *Al-Turki v. Ballard*, No. 10–cv–02404–WJM–CBS, 2013 WL 589174, at *14 (Feb. 14, 2013) (collecting authorities). As a result, I find that the PLRA does not separately bar Plaintiff from seeking compensatory damages in this action.

### 3. Punitive Damages

Punitive damages are permitted in a § 1983 claim when a plaintiff establishes the defendant has acted intentionally or with reckless disregard of violating his constitutional rights. *Smith v. Wade*, 461 U.S. 30, 51 (1983). Even if it stated a cognizable constitutional violation, Mr. Swan's Complaint fails to plead sufficient facts–beyond conclusory statements and labels–to state a cognizable claim Defendants knew they were violating Mr. Swan's constitutional rights, or acted with callous indifference as to whether such rights were being violated. Indeed, taken as a whole, Mr. Swan's Complaint appears to demonstrate that the individual Defendants were responsive and taking action with respect to his medical issues, albeit not at a pace desired by Plaintiff. [#1]. Accordingly, even if the Complaint survives dismissal, this court RECOMMENDS dismissal of any claim for punitive damages.

### 4. Injunctive Relief

Plaintiff's Complaint seeks unspecified "declaratory and other injunctive and/or equitable relief" from Defendants. [#1 at 13]. But under Article III of the Constitution, to pursue justiciable claims for injunctive relief, a plaintiff must allege facts showing a "real and immediate threat" of continued or recurrent harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660 (1983). Plaintiff's Complaint alleges no such facts. Indeed, as the CDOC Defendants argue, Plaintiff's own Complaint alleges that he received the very medical care–in the form of an MRI and reconstructive knee surgery-that Plaintiff claims he was previously wrongfully denied. [#22 at 15-16]. Plaintiff's request for injunctive relief is accordingly moot. *Cervantes v. Dixon*, No. 5:13–CV–205–C, 2014 WL 5285699 (N.D. Tex. Oct. 15, 2014) (in case where inmate alleged unreasonable delay in provision of reference to a specialist and surgical

procedure, finding request for injunctive relief moot because plaintiff was "examined by a specialist and underwent surgery" after filing of complaint).

## CONCLUSION

Accordingly, for the reasons set forth herein, this court respectfully RECOMMENDS that:

(1) The CHP Defendants' Motion to Dismiss [#20] be GRANTED;

(2) The CDOC Defendants' Motion to Dismiss [#22] be GRANTED;

(3) That Plaintiff's claims as to the CHP Defendants and CDOC Defendants be DISMISSED, WITHOUT PREJUDICE;

(4) That Plaintiff be ordered to show cause why this action should not be dismissed as to Defendant Julie Dorsey[4] for failure to effect proper service within 120 days as required by Fed. R. Civ. P. 4(m).[5]

---

[4] The CHP Defendants' Motion to Dismiss indicates that the defendant named as "Julie Dursey," is actually Julie D<u>o</u>rsey, and in any case, she has not been served. [#20 at 2, n.2].

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's

DATED: October 5, 2015 BY THE COURT:

s/ Nina Y. Wang
Nina Y. Wang
United States Magistrate Judge

---

ruling). *But see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).