IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00103-WJM-NYW

JOSHUA D. SWAN,

     Plaintiff,

v.

DR. MAURICE FAUVEL, D.O., Individually and his Official Capacity as Physician for Sterling Correctional Facility,
JAMIE SOUCIE, Individually and in her Official Capacity as Health Service Administrator for Sterling Correctional Facility,
PHYSICIAN HEALTH PARTNERS, INC., d/b/a Correctional Health Partners, a Colorado Corporation,
DR. STEPHEN KREBS, M.D., CEO and President of Correctional Health Partners and Chairman of Physician Health Partners,
JULIE DURSEY, Regional Manager of Physician Health Partners,
JOHN AND JANE DOES, 1 to 20, Individually and in their Official Capacities as Agents of the Colorado Department of Corrections, and
JOHN AND JANE DOES, Numbers 1 to 20, as Unidentified Employees Working for Physician Health Partners,

     Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Nina Y. Wang

     This action comes before the court on Plaintiff Joshua D. Swan's ("Plaintiff" or "Mr. Swan") Motion for Leave to File Amended Complaint (the "Motion to Amend"). [#53, filed Jan. 15, 2016]. Pursuant to the January 20, 2015 Order Referring Case [#7], the February 10, 2015 Reassignment [#12], and the Memorandum dated January 15, 2016 [#54], the Motion to Amend is before the undersigned Magistrate Judge. The court has reviewed the briefing, the case file in the instant action, and the applicable case law. The court finds that oral argument would not

materially assist in its disposition of the Motion to Amend. For the reasons set forth below, the court respectfully **RECOMMENDS** that the Motion to Amend be **DENIED**.

## BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Plaintiff Jonathan D. Swan is an inmate incarcerated by the Colorado Department of Corrections ("CDOC") at the Sterling Correctional Facility ("SCF"). In the original Complaint in this case, filed on January 15, 2015, Mr. Swan asserted claims under 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights against Physician Health Partners, Inc. d/b/a Correctional Health Partners ("CHP") and Dr. Stephen Krebs ("Dr. Krebs) (together, the "CHP Defendants"), Dr. Fauvel and Jamie Soucie (together, the "CDOC Defendants"), Julie Dorsey,[1] John and Jane Does Numbers 1-20, individually and in their official capacities as agents of the Colorado Department of Corrections, and John and Jane Does Numbers 1-20, as unidentified employees working for Physician Health Partners. These claims pertain to medical treatment Mr. Swan sought for an injury to his left knee that he sustained while playing basketball in a gymnasium within the SCF. The factual allegations surrounding Mr. Swan's injury and the alleged deliberate indifference to his serious medical needs are detailed in this court's October 5, 2015 Recommendation. *See* [#46 at 2-7].

In the October 5, 2015 Recommendation, this court recommended that two motions to dismiss, filed by the CHP Defendants and the CDOC Defendants, be granted, dismissing all claims against the CHP and CDOC Defendants. [#46]. Further, this court ordered Mr. Swan to show cause why his claims against Defendant Julie Dorsey should not be dismissed for failure to effect proper service on her within 120 days as required by Fed. R. Civ. P. 4(m). The presiding judge, the Honorable William J. Martinez, adopted the Recommendation on December 2, 2015.

---

[1] The caption of this case names Ms. Dorsey as Ms. Dursey. However, the CHP Defendants' Motion to Dismiss indicates that her name is Julie Dorsey. *See* [#20 at 2, n.2].

[#51]. Judge Martinez dismissed the claims against the CHP Defendants; the CDOC Defendants; Julie Dorsey; John and Jane Does 1-20 from the CDOC and John and Jane Does 1-20 from the CHP without prejudice. In doing so, Judge Martinez observed that "the survival of Plaintiff's claim against Krebs depends upon whether Plaintiff properly alleges that CHP had a policy of making medical decisions based solely on cost." [*Id*. at 9]. Ultimately, Judge Martinez determined that Plaintiff had failed to make sufficient allegations that there was a policy implemented by Dr. Krebs to sustain a claim against either CHP as an entity or Dr. Krebs as an individual. [*Id.* at 11]. Judge Martinez then allowed Mr. Swan until January 15, 2016 to seek to amend his complaint. [#51 at 15-16].

On January 15, 2016, Mr. Swan filed the present Motion for Leave to Amend. [#53]. Mr. Swan seeks to amend his Complaint to restate claims against Dr. Krebs and CHP. Mr. Swan argues that he should be granted leave to amend his Complaint to plead more specific facts supporting his Eighth Amendment claims,[2] which are necessary to demonstrate that these two Defendants violated his right to freedom from deliberate indifference to his medical needs. [#53 at 2]. The CDOC Defendants filed a Response to the Motion to Amend in which they stated that they take no position on the Motion for Leave to Amend because it does not appear that Mr. Swan attempts to revive any of his claims against the CDOC Defendants. [#55]. The CHP Defendants filed a Response in opposition to the Motion to Amend in which they argue that the Motion to Amend should be denied because the proposed Amended Complaint ("Proposed Amended Complaint") [#53-1] fails to cure the deficiencies previously identified by the court

---

[2] In the Proposed Amended Complaint, Plaintiff alleges that Defendant Krebs violated his "First Amendment" right to freedom from cruel and unusual punishment. [#53-1 at 10]. Construing this assertion liberally, this court interprets Mr. Swan's claim as one under the Eighth Amendment, which prohibits cruel and unusual punishment. *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).

3

and allowing the Proposed Amended Complaint would be futile because it fails to state any cognizable claim against the CHP Defendants as a matter of law. [#56 at 3].

**LEGAL STANDARD**

Where, as here, there is no Scheduling Order entered in the case, a motion for leave to amend the pleadings is governed by Fed. R. Civ. P. 15(a). This rule provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 900 (10th Cir. 2004); *see also E.SPIRE Commc'ns, Inc. v. New Mexico Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004); *Ketcham v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992). Whether to allow amendment is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978-79 (10th Cir. 1996).

Mr. Swan is *pro se* and is proceeding in this action *in forma pauperis* pursuant to 28 U.S.C. § 1915. *See* [#4]. Because Mr. Swan is appearing *pro se*, the court "review[s] [his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) (A court's "role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("[T]he court will not construct arguments or theories for the plaintiff in the absence of any

discussion of those issues.") (internal citation omitted).  Furthermore, the court may, at any time and of its own accord, dismiss any action that is frivolous or which fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 12(b)(6); *Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

## ANALYSIS

Mr. Swan's Proposed Amended Complaint names Dr. Krebs and CHP as the only two defendants and does not appear to attempt to re-plead claims against any of the other previously-named Defendants.[3]  *See generally* [#53-1].  Prior to addressing the adequacy of pleading of the proposed amended claims against Dr. Krebs and CHP, this court will first address whether CHP is entitled to immunity under the Eleventh Amendment.

**I.     Eleventh Amendment Immunity**

In Judge Martinez's December 2 Order, he stated that should Mr. Swan seek leave to amend the Complaint, all parties should address whether CHP, in its apparent role as an agent of the state through its contractual relationship with the CDOC, can be sued for damages under 42 U.S.C. § 1983.  [#51 at 10 n.3].  Accordingly, in response to Mr. Swan's Motion to Amend, CHP stated in its briefing that it does not believe that it is entitled to immunity under the Eleventh Amendment.  [#56 at 8].  The Parties also submitted supplemental briefing on this issue.  [#62; #63].  Because it has an independent obligation to satisfy itself as to its subject matter

---

[3] The court notes that Mr. Swan did not comply with D.C.COLO.LCivR 15.1(b), which requires that "a party who files an opposed motion for leave to amend a pleading shall attach as an exhibit a copy of the proposed amended pleading which strikes through (e.g. strikes through) the text to be deleted and underlines (e.g. underlines) the text to be added."  However, Mr. Swan acknowledges this failure to comply with the rule based on his limited access to his legal papers and lack of access to a word processor.  In the circumstances presented in this case, the court will decline to strike Mr. Swan's Motion to Amend for failure to comply with Local Rule 15.1(b.  However, the all Parties are advised that failures to comply with the Local Rules may result in the non-compliant filings being stricken without substantive consideration.

jurisdiction, this court proceeds to analyze the issue. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

The Eleventh Amendment acts as a "bar to suits in federal courts against an unconsenting state brought by the state's own citizens." *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002). This bar only applies to claims for monetary relief. If a "private party sues a state officer for prospective injunctive or declaratory relief from an ongoing violation of the Constitution or federal laws, the suit is not considered to be against the state itself and the Eleventh Amendment does not apply." *Id.* In *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, the Supreme Court held that "[t]he bar of the Eleventh Amendment to suits in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." 429 U.S. 274, 280 (1977). In interpreting *Mt. Healthy*, the Tenth Circuit has "explained that '[t]he arm-of-the-state doctrine bestows immunity on entities created by state governments that operate as alter egos or instrumentalities of the states.'" *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996)).

In *Sturdevant*, the Tenth Circuit set out and explained the framework for evaluating the arm-of-the-state issue. Under *Sturdevant,* the court begins by considering: (1) whether the entity is legally liable for the anticipated judgment; and (2) whether the entity is an autonomous creation. *Sturdevant*, 218 F.3d at 1165-69. When considering the second element, the court examines: (1) the entity's characterization under state law; (2) state control over the entity; and (3) the entity's degree of state funding and its ability to issue bonds and levy taxes. *Id.*

In weighing these factors, this court concludes that CHP is not considered an arm of the state for purposes of the Eleventh Amendment. CHP contracts with the CDOC to act as a third-party administrator to determine the propriety and medical necessity of medical care outside of the CDOC medical system for inmates. [#63 at ¶ 3]. As such, it is characterized not a state entity, but an independent contractor of the state. In addition, the State of Colorado's treasury would not be implicated by any judgment against CHP. [*Id.* at ¶ 5]. As opposed to being an arm-of-the-state, this court concludes that CHP is a private, independent contractor to which Eleventh Amendment immunity does not extend. *See, e.g.*, *Phillips v. Tiona*, 508 F. App'x. 737, 751-52 (10th Cir. 2013) ("The line separating a State-operated prison from one operated by a private corporation is not just cosmetic. There are important differences, creating a material and significant asymmetry. Thus, for instance, whereas the State and its CDOC employees enjoy Eleventh Amendment immunity from damages suits under § 1983 for their official actions, and CDOC employees in their individual capacities enjoy qualified immunity in § 1983 damages actions, CCA and its private prison employees enjoy neither."); *Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir. 1991) (holding a private insurer of the state not entitled to Eleventh Amendment sovereign immunity and noting the same would be true "for any other provider of goods or services to the State").

This court does not recommend dismissing the claims against Defendant CHP on the basis of immunity under the Eleventh Amendment. Moreover, this court finds that the application of the *Monell* doctrine to CHP is appropriate in this case. As other courts in this District have found, the *Monell* doctrine extends to private corporations such as CHP acting under color of law, even where those private corporations were operating under state and federal regulations. *See, e.g.*, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). And on

this basis, courts in this district have found that *Monell* claims were appropriately brought against CHP. *See, e.g.*, *Sherman v. Klenke*, No. 11-cv-03091-PAB-CBS, 2013 WL 1283835, at *4 (D. Colo. 2013).

II.    **Mr. Swan's Claims in the Proposed Amended Complaint Against Dr. Krebs and CHP**

   A.    **Claims Against Dr. Krebs**

As an initial matter, the court notes that the way that Mr. Swan has pled his claims in the Proposed Amended Complaint, he appears to be asserting *Monell* claims against both Dr. Krebs and the CHP for implementing policies that resulted in violations of his Eighth Amendment right to be free from cruel and unusual punishment. Indeed, Mr. Swan describes the "nature of the case" as "about the Defendants' deliberate indifference to the Plaintiff's serious medical need; specifically, it is about the Defendants' customs and policies which unreasonably delay proper treatment of the Plaintiff's injury and caused unnecessary pain and suffering." [#53-1 at ¶ 7]. However, it is well-settled that there can be no § 1983 entity liability without an underlying individual capacity claim. *See Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 747 (10th Cir. 1999). Therefore, the court will first turn to the question of whether Plaintiff has stated a cognizable claim against Dr. Krebs in his individual capacity. The following well-pled allegations are drawn from the Proposed Amended Complaint and taken as true for the purpose of considering the instant Motion to Amend.

According to Mr. Swan, Dr. Krebs (and CHP) violated his Eighth Amendment[4] right to be free from cruel and unusual punishment. [#53-1 at 10]. In particular, Mr. Swan alleges that at

---

[4] The court notes that Mr. Swan interchanges references to the First and Eighth Amendments in his Proposed Amended Complaint. *See, e.g.*, [#53-1 at 10, 13]. However, the nature of his claims and the history of the proceedings in this case makes it clear that Mr. Swan's claims for deliberate indifference to his serious medical needs are brought pursuant only to the Eighth

8

all times relevant to the Proposed Amended Complaint, Dr. Krebs was acting under color of Colorado law as the Chairman of the Board of Managers for Physician Health Partners and its President, CEO, and Chief Medical Officer. [#53-1 at ¶¶ 3, 45-46]. Mr. Swan alleges that Dr. Krebs was personally responsible for denying approval of an MRI of Mr. Swan's left knee despite Dr. Fauvel's recommendations that such treatment was medically advisable, and thereby acted with deliberate indifference to a substantial risk of serious harm. The denial of such approval was allegedly based on cost considerations. Mr. Swan's claims against Mr. Krebs and CHP are premised on this purported misconduct.

Mr. Swan asserts that Dr. Krebs was instrumental in the creation of CHP and was directly responsible for formulating and establishing its policies and customs, and in particular, the customs and policies which resulted in Dr. Fauvel's MRI request being denied. [#53-1 at ¶ 47]. Mr. Swan alleges that at all times relevant to the Propose Amended Complaint, Dr. Krebs reviewed and made final, non-reviewable decisions on MRI requests submitted to CHP. [*Id.* at ¶ 48]. Moreover, according to the Proposed Amended Complaint, Dr. Krebs personally denied all MRI requests submitted to CHP by Dr. Fauvel for Mr. Swan, despite the fact that it was clear from the requests that an MRI was necessary to diagnose what was wrong with Mr. Swan's knee and what treatment would be effective and appropriate. [*Id.* at ¶ 49].

Dr. Krebs purportedly denied these MRI requests because he was following the established cost-saving customs and policies of CHP. [*Id.* at ¶ 50]. Plaintiff further alleges that when Dr. Krebs denied these MRI requests, Dr. Krebs was aware that his actions would substantially delay Mr. Swan's access to a reliable diagnosis and the effective and appropriate treatment that was needed. [*Id.* at ¶ 51]. Moreover, according to Mr. Swan, Dr. Krebs was also

---

Amendment. Accordingly, the court considers the references to the First Amendment to be typos.

aware that by ordering physical therapy as a cost-reducing step in Mr. Swan's case, there was a substantial risk of worsening Mr. Swan's because it was unclear exactly what was wrong with Mr. Swan's left knee. [*Id.*].

On December 23, 2013, Plaintiff was seen by physician's assistant Gatbel Chamjock, and Mr. Chamjock submitted a request to CHP for a consult with an outside orthopedic surgeon that was approved. [*Id.* at ¶ 34]. That request was approved, and in March 2014, Mr. Swan underwent an MRI. [*Id.* at ¶ 35]. On June 3, 2014, surgery was performed on Mr. Swan's left knee. [*Id.* at ¶ 37]. Mr. Swan asserts that as a result of Dr. Krebs' denials of his MRI requests, Mr. Swan suffered years of unnecessary delay in receiving appropriate medical treatment, pain, and significant deterioration of his knee beyond his initial injury. [*Id.* at ¶ 52].

As set forth in this court's October 5 Recommendation, the Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). To plead a cognizable claim for deliberate indifference, Mr. Swan must plead both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is sufficiently serious. *Farmer*, 511 U.S. at 834. A medical need is considered sufficiently serious to require attention only "if the condition has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citation and quotation omitted). The subjective component requires the plaintiff to plead that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Under the law of the Tenth Circuit, "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citation omitted). But a mere difference of opinion as to the proper course of treatment warranted for an inmate does not standing alone support a claim for cruel and unusual punishment. *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

This court recommended dismissing the claim against Dr. Krebs as it was previously pled in Mr. Swan's original Complaint because Mr. Swan's original allegations against Dr. Krebs and the other medical providers that he continually requested an MRI, and that certain medical professionals agreed that such an evaluation would be clinically appropriate, while others disagreed and refused to authorize it, do not amount to a cognizable claim that the care actually prescribed and received constitutes deliberate indifference. Judge Martinez adopted the Recommendation, but noted that the cases Defendants cited for the proposition that a difference in opinion regarding the proper course of medical treatment were not cases involving two medical professionals with differing medical judgments, but rather involved a difference of opinion between the plaintiff and the treating physician regarding the appropriate course of care. [#51 at 8-9]. Judge Martinez found that Dr. Fauvel's MRI request served to inform Dr. Krebs as to the severity of the injury and the medical necessity of the MRI, and Dr. Krebs' choice to recommend a more conservative therapy knowing that an MRI was necessary could potentially constitute deliberate indifference. [*Id.*at 9]. Nevertheless, Judge Martinez stated that he read the Complaint to state that Dr. Krebs denied Mr. Swan's MRI request solely because CHP did not

want to incur the cost, and therefore the survival of Mr. Swan's claim against Dr. Krebs depended on whether Mr. Swan properly alleged that CHP had a policy of making medical decisions based *solely* on cost, without regard to the medical needs and consequences to the inmate. [*Id.* (emphasis added)]. Therefore, the question of whether Mr. Swan should be permitted to amend his operative complaint to state a claim against Dr. Krebs and CHP turns on whether his newly-pled allegations can overcome the previously identified deficiencies.

Mr. Swan's Proposed Amended Complaint contains additional allegations regarding a policy or custom by CHP of denying inmates access to medical care based solely on cost, *see, e.g.*, [#53-1 at ¶¶ 10-14]. Mr. Swan pleads that Dr. Krebs "personally denied all MRI requests submitted to CHP by Dr. Fauvel for the Plaintiff, though it was clear from the requests that an MRI was necessary to diagnose what was wrong with the Plaintiff's knee and what treatment would be both effective and appropriate." [#53-1 at ¶ 49]. Mr. Swan further avers that "Stephen Krebs denied the above MRI requests because he was following the established cost-saving customs and policies of CHP." [*Id.* at ¶ 50]. Dr. Krebs also was "aware that his actions would substantially delay the Plaintiff's access to a reliable diagnosis and the effective and appropriate treatment that was needed. The Defendant was also aware that by ordering physical therapy as a cost-reducing step in the Plaintiff's case there was a substantial risk of worsening the Plaintiff's injury – since nobody knew exactly what was wrong with the Plaintiff's left knee." [*Id.* at ¶ 51]. The court respectfully finds that even taking these allegations as true, in the light most favorable to Mr. Swan, they are still not sufficient to survive dismissal, particularly in light of the Tenth Circuit's recent decision in *Sherman v. Klenke*, -- F. App'x --, No. 15-1378, 2016 WL 3453697, at *8-9 (10th Cir. June 23, 2016).

In *Sherman*, the plaintiff alleged an Eighth Amendment violation against Dr. Krebs on the basis that Dr. Krebs and CHP denied his request for a surgery, even after such surgery was recommended by the doctor at the correctional facility. In affirming the District Court's dismissal of the claim on Rule 12(b)(6) grounds, the Tenth Circuit read the plaintiff's complaint liberally to assert Dr. Krebs knew:

> (1) knew Mr. Sherman was in pain and that Dr. Rieger had recommended surgery; (2) knew surgery was the only way to fix Mr. Sherman's hernia; and (3) refused to approve the surgery on two separate occasions, thereby "caus[ing] [Mr. Sherman] unnecessary pain and suffering.

*Sherman*, 2016 WL 3453697, at *8. The Court then assumed, for the purposes of its analysis, that the plaintiff had adequately pled the objective component of the deliberate indifference standard. *Id.* In addressing the plaintiff's contentions that Dr. Krebs' motivations for denying the surgery were financial and his interests were in the health of CHP rather than in the health of the CDOC inmates, the Tenth Circuit found that such an allegation, without additional facts, were speculative, and could not withstand a motion to dismiss:

> We assume for purposes of this analysis that the pain was sufficiently serious under the objective component of this inquiry. But the allegations against Dr. Krebs do not warrant an inference that Dr. Krebs's denial of surgery was the result of deliberate indifference to Mr. Sherman's pain. Assuming Dr. Krebs was indeed responsible for denying the surgery that Dr. Rieger twice recommended, this discord—absent other facts—amounts to nothing more than a difference of professional opinion, which cannot give rise to an inference of deliberate indifference. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (noting that two doctors' difference of opinion was insufficient to substantiate an inmate's claim of deliberate indifference).

*Sherman*, 2016 WL 3453697, at *9.

In this case, the denial at issue involves a particular diagnostic procedure, *i.e.*, an MRI, rather than a particular course of treatment. Generally, the question of whether an MRI or additional diagnostic techniques or forms of treatment is indicated is a classic example of a

13

matter for medical judgment. *Estelle v. Gamble*, 529 U.S. 97, 107 (1976); *Self*, 439 F.3d at 1232 ("Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing."). And Mr. Swan does not plead any specific facts that distinguish this case from this general framework. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Mr. Swan's allegations do not contain any non-conclusory allegations that Dr. Krebs was reckless in any manner. [#53-1]. The Proposed Amended Complaint does not allege that Dr. Krebs falsified any medical information to justify his determination to require a "more conservative approach" before approving an MRI. *Cf. Parnisi v. Colo. State Hospital,* 992 F.2d 1223, 1993 WL 118860, at *2 (10th Cir. Apr. 15, 1993).

As observed by Judge Martinez in his Order, there might be a circumstance in which an Eighth Amendment violation could arise when one medical provider disregards the diagnosis of another, and the plaintiff alleges facts to demonstrate that the medical treatment was improperly withheld based solely on cost. [#51 at 8-9]. But as pled in the Proposed Amended Complaint, this is not that case. The allegations Mr. Swan's own recitation of facts demonstrates that he was provided with interim treatment, albeit unsuccessful in resolving his medical condition, and that as soon as the conservative approach proved unavailing, Mr. Chamjock's request for an MRI was granted. Section 1983 provides individuals an avenue of redress for constitutional violations, not for dissatisfaction or even medical negligence. *Estelle*, 429 U.S. at 106. And Mr. Swan's allegations are not dissimilar to what non-incarcerated individuals must endure to see a specialist using certain private insurance or government benefits. *See, e.g., Sherman*, 2016 WL 3453697, at * 9 (citing *Winslow v. Prison Health Services*, 406 F. App'x 671, 674 (3d Cir. 2011)

14

(observing that prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment); *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (holding that the Eighth Amendment does not require prison officials to provide prisoners with better conditions than are enjoyed by a substantial numbers of free Americans).

The facts as alleged boil down to a contention that Plaintiff had a right to a particular course of treatment at a particular time: when Dr. Fauvel first requested the MRI in May 2013—as opposed to when he received the MRI in March 2014, when CHP was satisfied that a more "conservative approach" would not heal his condition. This court recognizes the frustration and physical pain Mr. Swan endured between May 2013 and March 2014, while he awaited an MRI and was required to undergo other treatments. But the Supreme Court and the Tenth Circuit have plainly held that the Eighth Amendment does not provide inmates a right to a particular course of treatment. *See Estelle*, 429 U.S. at 107; *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006). And as alleged, this court finds that this case is more analogous to others where courts in the Tenth Circuit have found that a professional disagreement between two providers about the appropriate course of treatment, without more, does not constitute a violation of the Eighth Amendment. *See Sherman*, 2016 WL 3453697, at *8-9; *Fleming v. Uphoff*, 201 F.3d 389, 2000 WL 374295 (10th Cir. Apr. 12, 2000); *Wells v. Krebs*, No. 10-cv-00023-LTB-KMT, 2010 WL 3521777, at *9 (D. Colo. Sept. 1, 2010). Accordingly, this court concludes that Mr. Swan's allegations against Dr. Krebs do not state a cognizable constitutional violation under the Eighth Amendment.

B.     **Claims Against CHP**

Because this court concludes that Plaintiff has failed to state an underlying constitutional violation that is cognizable under the Eighth Amendment against Dr. Krebs, it also finds that no claim may be stated against CHP as an entity. *See Butler*, 172 F.3d at 747. Even if this court were to reach the substantive issue of whether Plaintiff had adequately pled a policy or practice to support a *Monell* claim against CHP, it would find that as alleged, is still insufficient. In his Proposed Amended Complaint, Plaintiff avers that "one of CHP's policies was to provide its services as cheaply as possible," which Mr. Swan alleges CHP does "primarily . . . through cost-saving measures, which are embodied in various customs and policies." [#53-1 at ¶ 11]. According to the Proposed Amended Complaint, "[o]ne of CHP's customs is to approve as few MRI diagnostic tests per year as possible," and another "[o]ne of CHP's customs is to deny all initial requests for MRIs. A second policy is to deny all subsequent MRI requests until it is clear that a battery of cost-saving steps have been taken." [#53-1 at ¶ 12]. The Tenth Circuit has characterized this type of allegation as "wholly conclusory," and found it to be insufficient to survive a motion to dismiss. *See Sherman*, 2016 WL 3453697, at *10.

Accordingly, this court finds that Mr. Swan's attempts to amend his operative complaint are futile, and a recommendation of dismissal is appropriate.

## CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)     Plaintiff Joshua D. Swan's Motion for Leave to File Amended Complaint [#53] be **DENIED**.[5]

---

[5] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1);

DATED: July 7, 2016                    BY THE COURT:

                                                                              s/ Nina Y. Wang
                                                                              Nina Y. Wang
                                                                              United States Magistrate Judge

---

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).