IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-0103-WJM-NYW

JOSHUA D. SWAN,

    Plaintiff,

v.

PHYSICIAN HEALTH PARTNERS, INC., a Colorado Corporation d/b/a
CORRECTIONAL HEALTH PARTNERS; and
STEPHEN KREBS, CEO and President of Correctional Health Partners and Chairman
of Physician Health Partners,

    Defendants.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND TERMINATING CASE**

Plaintiff Joshua D. Swan ("Plaintiff") is currently in the custody of the Colorado Department of Corrections ("CDOC"). He alleges that Defendants Correctional Health Partners ("CHP") and Dr. Stephen Krebs ("Dr. Krebs") violated his Eighth Amendment right to be free from cruel and unusual punishment when CHP, through Dr. Krebs, denied an MRI request and thereby prolonged the time before Plaintiff could receive surgery on his knee.

Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 116.) For the reasons explained below, the Court will grant the motion, vacate the upcoming trial, direct judgment in Defendants' favor, and terminate this case.

**I. LEGAL STANDARD**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  PRELIMINARY MATTERS

Rule 56 speaks unequivocally about a summary judgment movant's and opponent's burdens of production:

> A party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1) (emphasis added).  In addition, the undersigned requires that

2

the summary judgment opponent admit or deny the movant's affirmative factual assertions with "a specific reference to admissible evidence in the record supporting the denial." WJM Revised Practice Standard III.E.4(b).

Despite this, Plaintiff supports only four of his denials of Defendants' affirmative factual assertions with record evidence, or with argument that Defendants misinterpret their cited evidence. (*See* ECF No. 129 at 5–6 ¶¶ 6, 10, 12, 16.) And, of Plaintiff's own affirmative factual assertions, only two are supported by citations to anything, with only one of those citations being to a document "in the record" (Plaintiff's Ex. 2)—the other citation is to a website printout disclosed for the first time with the response brief (Plaintiff's Ex. 1). (*See id.* at 1–3; *see also* ECF No. 132 at 5.)

Out of an abundance of caution, Defendants have taken the time to admit or deny Plaintiff's affirmative factual assertions, whether properly supported or not. (*Id.* at 2–9.) To the extent Defendants have admitted an assertion, the Court will treat it as admissible and undisputed for present purposes. To the extent Defendants have denied an assertion, the Court will disregard that assertion, save for the two assertions supported by evidence.[1] To the extent Plaintiff has denied one of Defendants' affirmative assertions but has failed to properly support that denial, the Court will disregard the denial and deem Defendants' assertion undisputed.

### III. BACKGROUND

Subject to the foregoing discussion, the following facts are undisputed.

At all times relevant to this lawsuit, Plaintiff was an inmate at CDOC's Sterling Correctional Facility ("Sterling"). (ECF No. 116 at 5, ¶ 19.) On February 2, 2013,

---

[1] The Court will determine below (Part IV.B) whether the website printout is proper supporting evidence.

3

Plaintiff "was on the basketball court [at Sterling] and bent over to pick up a basketball and felt severe pain [in] his left knee." (ECF No. 129 at 1.) On February 8, 2013, a CDOC-employed physician, Dr. Maurice Fauvel, examined Plaintiff's left knee. (ECF No. 116 at 6, ¶ 24.) Dr. Fauvel is a general practitioner and is board certified in family medicine. (*Id.* ¶ 25.) Dr. Fauvel suspected a torn MCL and issued Plaintiff a pair of crutches. (*Id.* ¶ 26.) On February 12, 2013, the Sterling clinic x-rayed Plaintiff's knee and found no fractures. (*Id.* ¶ 27; ECF No. 129 at 2.)

Plaintiff saw Dr. Fauvel again on February 25, 2013, and April 17, 2013. (ECF No. 116 at 7, ¶ 28.) It is not clear what happened at these visits.

Plaintiff then saw Dr. Fauvel on May 2, 2013, reporting knee pain. (*Id.* ¶ 29.) Dr. Fauvel's treatment note for that visit included the following subjective report from Plaintiff: "[H]as been using cane and flexing/extending as possible. Swelling has gone down but [inmate complains of] L knee painfully giving out." (ECF No. 118-4 at 9.) Dr. Fauvel's objective assessment in that treatment note stated: "Stiffly rises out of chair; limp in L leg. . . . L knee still with effusion [*i.e.*, joint swelling], ACL with some laxity; tenderness along the lateral joint line. Positive McMurrays testing."[2] (ECF No. 118-4 at 9.) Plaintiff asked for an MRI because he had previously torn ligaments in both of his knees and he believed that only an MRI would be able to confirm a ligament tear. (ECF No. 116 at 7, ¶ 30.) Dr. Fauvel responded that Plaintiff "may have to participate in conservative therapies like exercise and strengthening before getting an MRI." (*Id.*)

The following day, May 3, 2013, Dr. Fauvel submitted an MRI preauthorization

---

[2] The McMurray test is a particular method of manipulating the leg and knee "to determine injury to meniscal structures." *Stedmans Medical Dictionary*, definition no. 906520 (Westlaw, Nov. 2014 update).

4

request on Plaintiff's behalf. (*Id.* ¶ 31.) That request went to Defendant CHP. (*Id.*) CHP is a CDOC contractor. (*Id.* at 2, ¶ 1.) Its job is to "review and provide prior authorization" when CDOC inmates seek medical care outside of CDOC's internal medical system. (*Id.*)

> When a health care provider at a prison requests a referral for a specific service, [the provider] seek[s] prior authorization by completing a specific set of data and attaching clinical information to the[] request. It is the medical provider's responsibility to attach all relevant medical history and documents when requesting a referral or a medical procedure such as an MRI.

(*Id.* at 3, ¶ 3.) CHP's "CDOC Provider Manual" directs referring physicians to list any conservative therapies that have been tried and failed. (*Id.* ¶ 7.)

Dr. Fauvel's preauthorization request to CHP contained no more than the subjective report and objective assessment from his May 2, 2013 treatment note, including the portions quoted above and other information not relevant to the knee injury (*e.g.*, the Plaintiff's age, blood pressure, etc.). (ECF No. 118-4 at 11.) As of May 9, 2013, the request was marked "pended for additional info" in CHP's internal record-keeping system. (*Id.* (capitalization removed).) On May 21, 2013, a comment was added to CHP's record of this request: "Reviewed by M.D., pend[ed] for plain films [apparently referring to x-rays], arthrocentesis results [extracting fluid from a joint capsule] and results of thorough conservative therapy. . . . (Called to Fauvel, [who was] with the patient per Jamie. Faxed to x 8815[.])" (*Id.* at 10.)

Plaintiff had not received conservative therapy by this time, nor had he undergone an arthrocentesis procedure. (ECF No. 116 at 8, ¶ 35.) Regardless, Dr. Fauvel did not respond to CHP's request for more information before June 17, 2013. That is the date that Defendant Dr. Krebs entered the following disposition of the MRI

5

request into CHP's system: "[R]equested info never received despite call, fax and emails. Time is up. Denied. Initial request contained inadequate documentation and additional information was requested but never received." (*Id.* at 9, ¶ 37.)

On July 2, 2013, Dr. Fauvel sent additional information to CHP, including x-rays and other health records. (*Id.* ¶ 40.) On July 17, 2013, a different CHP employee, Dr. Jennifer Mix (not a defendant here), responded to the additional materials with the following note: "Remains denied; no documentation of failed conservative management. CDOC mandates adequate documentation of need for all requested services." (*Id.* ¶ 41; ECF No. 118-4 at 12.)

Plaintiff sent a written request to Dr. Fauvel on August 7, 2013, requesting an appointment to discuss the MRI request. (ECF No. 116 at 10, ¶ 45.) Dr. Fauvel responded in writing on August 22, 2013, informing Plaintiff that CHP mandated conservative therapy first, and that he would request "a Physical Therapy consult." (*Id.*) For unclear reasons, Dr. Fauvel never submitted any request for physical therapy until November 15, 2013. (*Id.* at 11, ¶ 48.) CHP approved the request on November 27, 2013. (*Id.*) Plaintiff had a physical therapy appointment on December 11, 2013, and was provided exercises to perform on his own. (*Id.* ¶ 50.)

By late December, Sterling medical staff concluded that physical therapy had not helped, and so obtained CHP's authorization to have an orthopedic specialist examine Plaintiff's knee. (*Id.* at 12, ¶¶ 53–54.) CHP approved that request about a week later, and Plaintiff was seen by an orthopedic specialist about six weeks after that. (*Id.* ¶¶ 54–56.) The specialist submitted his own MRI request to CHP, which CHP approved. (*Id.* at 13, ¶ 57.) Plaintiff had that MRI in March 2014, revealing a torn meniscus. (*Id.*

¶¶ 59–60.) CHP then approved knee surgery to repair the meniscus, and that surgery took place in June 2014. (*Id.* ¶¶ 61–62.)

### IV. ANALYSIS

A.  **General Eighth Amendment Principles**

Plaintiff brings this lawsuit under the Eighth Amendment, which protects against the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials to objectively serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Objectively serious medical needs are those that have "been diagnosed by a physician as mandating treatment or [are] so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014) (internal quotation marks omitted). A prison official is deliberately indifferent to such a need when the official "knows of and disregards [the medical need]; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Concerning the objective component, Plaintiff claims that his MRI was unjustifiably delayed, in turn unjustifiably delaying the eventual surgery and relief from pain. (ECF No. 129 at 7–10.) In other words, Plaintiff complains that he suffered pain much longer than constitutionally permissible. *Cf. Al-Turki*, 762 F.3d at 1193 ("substantial" pain endured while awaiting medical care "establishes the objective element of the deliberate indifference test" (internal quotation marks omitted)). Defendants concede for summary judgment purposes that "Plaintiff's knee injury constituted a serious medical need sufficient to meet the objective requirement of the

7

Eighth Amendment." (ECF No. 116 at 17–18.) Thus, the Court need only evaluate the subjective prong.

**B.     Dr. Krebs**

Plaintiff's theory of liability against Dr. Krebs is that the information contained in Dr. Fauvel's May 3, 2013 preauthorization request was enough to show that Dr. Krebs knew of "a serious medical condition that obviously needed the diagnostic tool of an MRI" but Krebs "knowingly disregarded" that need. (ECF No. 129 at 9.)[3] This suggests a disagreement of medical opinion, which is not a basis for Eighth Amendment liability. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) ("defendants did not have to bear the risk arising from the variations in the views of the doctors"). But even if this can be characterized as something other than a matter of medical opinion, Plaintiff's claim against Dr. Krebs must fail because he does not have the evidence to prove it.

The only way Plaintiff can hope to prove that Dr. Krebs was subjectively, deliberately indifferent—that he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . also dr[e]w the inference," *Farmer*, 511 U.S. at 837—based on Dr. Fauvel's preauthorization request is to prove that the information showed an indisputably obvious need for an MRI as a prerequisite to likely surgery. *See id.* at 842 ("a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). It would not be enough to show merely that failing to approve an immediate MRI fell below the

---

[3] Plaintiff also appears to claim that Dr. Krebs should have known at least by July 7, 2013 that Plaintiff needed an MRI. (*Id.* at 8–9.) This appears to be a reference to the information Dr. Fauvel sent to CHP after Dr. Krebs's initial denial. (*See* ECF No. at 9, ¶¶ 40–41.) It is undisputed, however, that Dr. Fauvel's additional information went to a different CHP reviewer who is not a defendant here. (*Id.* ¶ 41.)

8

community standard of care. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Plaintiff would need to show that approval of the MRI on the record before Dr. Krebs was, in effect, the only reasonable decision that a physician could make—to the exclusion of requesting additional information about, *e.g.*, conservative therapy or prior radiographs.

A lay jury is not capable of reading Dr. Fauvel's preauthorization request and judging for itself whether the need for an immediate MRI was obvious, and Plaintiff is unprepared to present the necessary expert testimony. It appears, rather, that all Plaintiff is prepared to present is a printout from the medical portion of TheFreeDictionary.com that describes the McMurray test and suggests that a positive test indicates a meniscal tear. (*See* ECF No. 129-1 at 2.) Setting aside foundation and hearsay problems inherent in this document, it still would not be enough to send the deliberate indifference question to a jury. As Defendants correctly put it, "Plaintiff has presented absolutely no support for his argument that the only proper course of treatment was [an] immediate MRI and [the] surgery he desired or that a conservative plan including time for healing and physical therapy [was constitutionally impermissible under the circumstances]." (ECF No. 132 at 14 (underscoring in original).)

In short, Plaintiff has failed to show that he has evidence from which a reasonable jury could conclude that Dr. Krebs acted with subjective deliberate indifference when he requested more information and then denied preauthorization due to a lack of response from Dr. Fauvel. The Court will enter summary judgment in Dr. Krebs's favor.

**C.     CHP**

For most of this lawsuit, Plaintiff has sought to hold CHP liable in addition to

9

Dr. Krebs. CHP is a business entity, not a natural person. In the Tenth Circuit, a business entity working on the state's behalf can only be liable through the municipal liability framework established by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003); *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 945–46 (10th Cir. 2005). Under *Monell*, a municipality—or, in this case, a private entity under contract with the state to fulfill one of the state's functions—can be liable in 42 U.S.C. § 1983 for damages only when the entity's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." 436 U.S. at 694.

In a prior order, the Court evaluated two alleged CHP policies: "(1) CHP's policy . . . to be profitable and to provide medical services as cheaply as possible ('Policy A'); and (2) CHP's policy . . . to deny all (or nearly all) initial requests for MRIs, and then deny subsequent requests until other steps were taken ('Policy B')." *Swan v. Physician Health Partners, Inc.*, 212 F. Supp. 3d 1000, 1008 (D. Colo. 2016) (ECF No. 69). The Court held that Policy A failed to state a claim, but that Policy B could go forward. *Id.* at 1008–10. Policy B, as the Court understood it, was that CHP denies all initial requests for MRIs, regardless of medical merit, and so makes an "arbitrary non-medical denial" that is not protected by the difference-of-medical-opinion principle, discussed above. *Id.* at 1009.

Surprisingly, Plaintiff's summary judgment response effectively abandons his allegation of the existence of a Policy B. Plaintiff admits that "there is no formal policy in the CHP Provider Manual for the Colorado Department of Corrections to deny all initial

requests for MRI," and Plaintiff nowhere alleges (much less cites record support for) a policy contained in any other document, or an unwritten practice, such as an informal policy or custom. (ECF No. 129 at 6, ¶ 18.) Plaintiff instead recharacterizes the policy as "put[ting] [up] significant barriers requiring all sorts of information and actions that if not complied with can result in denial." (*Id.*)

The Court may assume for the sake of argument that Dr. Krebs acted under such a policy and thereby carried out the alleged constitutional injury. Plaintiff nonetheless runs into the same problem, namely, lack of necessary evidence. Again, absent the guidance of an expert witness, a lay jury is not qualified to judge whether CHP requires unnecessary information or pointless prerequisites amounting to a policy of denying medical care for an arbitrary, non-medical reason. Plaintiff is not prepared to present such expert testimony, so his claim against CHP will necessarily fail as a matter of law. The Court will grant summary judgment in CHP's favor.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 116) is GRANTED;

2. The Final Trial Preparation Conference scheduled for October 19, 2018, and the five-day jury trial scheduled to commence on November 5, 2018 are both VACATED; and

3. The Clerk shall enter final judgment in favor of Defendants and against Plaintiff, and shall terminate this case. The parties shall bear their own attorneys' fees and costs.

Dated this 20th day of September, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge